D+F

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
SABRINA LEVY, JOSEPH BAILEY, BONNIE
PHILLIPS, VALERIE MACHEMER, JOHN
KUPER, and CHARLES ROSSI, individually and on
behalf of all others similarly situated,

          Plaintiffs,

  - against -

VERIZON INFORMATION SERVICES INC., a
Division of Verizon Communications Inc.,
VERIZON DIRECTORIES, CORP., VERIZON
ACCOUNTING AND INFORMATION SERVICES,
INC., and VERIZON NEW YORK DIRECTORY
SALES COMPANY,

          Defendants.
---------------------------------------------------------------x
JOSEPH PASQUALI, EVE WEGENER, EDWARD
SMITH and KIM COSSART, on behalf of themselves
and all other similarly situated and as class
representatives,

          Plaintiffs,

  - against -

VERIZON INFORMATION SERVICES, INC.,
VERIZON DIRECTORIES, CORP., VERIZON
ACCOUNTING AND INFORMATION SERVICES,
INC., and VERIZON NEW YORK DIRECTORY
SALES COMPANY,

          Defendants.
---------------------------------------------------------------x

<u>OPINION AND ORDER</u>

06 CV 1583 (NG) (SMG)

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ JUN 13 2007 ★

06 CV 5056 (NG) (SMG)

GERSHON, United States District Judge:

      On April 6, 2006, plaintiffs Sabrina Levy, Joseph Bailey, Bonnie Philips, Valerie Machemer, John Kuper, and Charles Rossi commenced civil action number 06-CV-1583 on behalf of a putative

1

class of similarly situated individuals, alleging that defendants Verizon Information Services, Inc., Verizon Directories, Corp., Verizon Accounting and Information Services, Inc., and Verizon New York Directory Sales Company (collectively, "Verizon") violated federal and state wage payment laws by (1) making unlawful deductions from the wages of sales employees and (2) failing to pay its sales employees an overtime premium for working more than 40 hours in a workweek. In a separate action, transferred to this court on August 29, 2007, under number 06-CV-5056, plaintiffs Joseph Pasqualli, Eve Wegener, Edward Smith, and Kim Cossart, on behalf of a putative class of similarly situated individuals, allege that defendants violated New York state wage payment law. On October 6, 2006, the court ordered that case numbers 06-CV-1583 and 06-CV-5056 be consolidated into lead case number 06-CV-1583 as related actions involving common questions of law and fact.

The motion currently before the court concerns only those plaintiffs who advance overtime claims. Specifically, plaintiffs Joseph Bailey, Valerie Machemer, and John Kuper seek to bring their overtime claims as a collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq*. These plaintiffs now move the court for (1) conditional certification of an overtime class; (2) judicially approved notice to all potential class members of this lawsuit; and (3) production by defendants of an electronic list of potential class members with their most recent contact information.

## FACTS

The facts alleged by plaintiffs include the following:

Defendants control, oversee, and direct the operation of the offices in which plaintiffs worked, including the payroll. Plaintiffs worked as Telephone Sales Representatives ("TSRs") for Verizon in their offices in New York and New Jersey. They bring this collective action under the

FLSA on behalf of themselves and other sales representatives whom defendants allegedly failed to pay overtime wages for all hours worked over forty in a workweek.

To participate in this case, potential plaintiffs must affirmatively "opt-in" to the action by filing a written consent to join, as required by 29 U.S.C. § 216(b). The three plaintiffs mentioned above are joined in this action by 19 former and current TSRs who have signed written consent forms (the "Opt-In Plaintiffs"). In addition, one non-plaintiff declarant has submitted a declaration in support of plaintiffs' claims. These Opt-In Plaintiffs, and the non-plaintiff declarant, are, or have been, employed by Verizon as sales representatives in facilities or offices in New York, New Jersey, and Pennsylvania.

As TSRs, plaintiffs' job is to sell Yellow Pages and on-line directory advertising. Plaintiffs all make sales over the telephone, are required to follow Verizon's policies and protocol for selling advertising, and are paid under the same compensation scheme. A TSR earns a fixed base wage based on a 40-hour work week schedule and a commission which is dependent on the number of ads he or she sells. Verizon allegedly has no system by which TSRs can record the hours they worked. In fact, plaintiffs allege, TSRs are routinely paid for forty hours per workweek no matter how many hours they actually worked.

Verizon, allegedly by company policy, rarely paid any overtime to TSRs. Verizon managers required that sales representatives be paid for overtime hours only if such payment was "pre-approved" – a policy that resulted in few if any overtime payments. Yet employees often arrived early, worked beyond their shifts and during breaks, and took work home. These practices were the norm, and they were encouraged by Verizon policies and practices. Verizon exerted significant pressure on its sales representatives to meet or exceed strict sales quotas. As a result, TSRs

3

routinely worked in excess of forty hours a week.

Plaintiffs allege that they were not paid overtime compensation for most, if not all, of the overtime hours they worked. Plaintiffs' managers and supervisors were well aware of plaintiffs' work schedules and ignored plaintiffs' complaints of unpaid overtime.

Defendants dispute plaintiffs' claims that "Telephone Sales Representatives are routinely paid for forty hours per workweek no matter how many hours they actually worked," and that Verizon, by company policy, "rarely paid any overtime to Telephone Sales Representatives." In fact, defendants argue, the company's overtime policy requires that employees who work in excess of 40 hours per workweek be paid in accordance with the FLSA. Defendants point out that all TSRs, except for those working in the Erie, Pennsylvania office, are represented by a union, the Communications Workers of America, AFL-CIO, and are subject to collective bargaining agreements ("CBAs"). Each CBA has materially identical provisions regarding overtime, *i.e.*, that overtime will be paid to full-time regular employees who work in excess of forty hours in one week at a rate of one and one-half times their regular rate of pay, in accordance with the FLSA.[1] Any deviations from these provisions, defendants argue, are at best isolated incidents, and do not implicate the company's overtime policy.

Plaintiffs filed this motion for conditional certification on March 12, 2007, requesting that the court approve the sending of notice to potential opt-in plaintiffs. In doing so, plaintiffs annexed to their reply papers proposed text for such a notice and for a consent form.

---

[1] Defendants assert that the overtime policy applicable to the non-unionized sales representatives in Erie, Pennsylvania is materially identical to the overtime provisions applicable to the unionized sales representatives in the CBAs.

# DISCUSSION

## I. FLSA Collective Actions

Plaintiffs seek conditional certification and court-facilitated notice pursuant to the FLSA, 29 U.S.C. § 216(b). The FLSA specifically contemplates plaintiffs pursuing their claims collectively:

> An action ... may be maintained against any employer ... in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which the action is brought.

29 U.S.C. § 216(b). The collective action procedure provides for efficient adjudication of similar claims and affords plaintiffs "the advantage of lower individual costs to vindicate rights by the pooling of resources." *Hoffman-La Roche v. Sperling*, 493 U.S. 165, 170 (1989).

Three features define an FLSA collective action. First, in order to participate, an employee must "opt-in," meaning that he or she must consent in writing to join the suit, and that consent must be filed with the court. 29 U.S.C. § 216(b). Second, the statute of limitations runs on each employee's claim until his individual opt-in form is filed with the court, at which point it is tolled. *See Hoffmann v. Sbarro, Inc.*, 982 F.Supp. 249, 260 (S.D.N.Y. 1997). Third, to serve the "broad remedial purpose" of the FLSA, courts can order notice to other potentially similarly situated employees to inform them of their right to opt into the case. *Hoffman-La Roche*, 493 U.S. at 172-73; *Braunstein v. Eastern Photographic Laboratories, Inc.*, 600 F.2d 335, 336 (2d Cir. 1978).

## II. Conditional Certification

### A. Standard for Certification

Courts generally follow a two-step process when determining whether a matter should proceed as a collective action. A court first determines whether class members are "similarly

situated," based on pleadings and affidavits. *Lee v. ABC Carpet & Home*, 236 F.R.D. 193, 197 (S.D.N.Y. 2006). If the plaintiffs meet the "minimal burden" of showing that the "similarly situated" requirement is met, a court conditionally certifies the class as a collective action. *Id*. Potential class members are then notified and provided with the opportunity to opt into the action. *Id*.

At the second step, after discovery, a court examines the record and again makes a factual finding regarding the similarly situated requirement. *Id*. If the claimants are similarly situated, the collective action proceeds to trial, and, if they are not, the class is decertified, the claims of the opt-in plaintiffs are dismissed without prejudice, and the class representative may proceed on his or her own claims. *Id*.

Plaintiffs may satisfy the similarly situated requirement by making a "modest factual showing sufficient to demonstrate that [they] and potential plaintiffs together were victims of a common policy or plan that violated the law." *Id*. Plaintiffs' burden is minimal because the determination that the parties are similarly situated is merely a preliminary one that may be modified or reversed at the second certification stage. *Id*.; *Realite v. Ark Restaurants Corp.*, 7 F. Supp. 2d 303, 308 (S.D.N.Y. 1998) (allowing notice, but noting that the collective action may be decertified or divided into subgroups "should discovery reveal that plaintiffs in fact are not similarly situated").

At this conditional certification stage, the focus of the inquiry "is not on whether there has been an actual violation of law but rather on whether the proposed plaintiffs are 'similarly situated' under 29 U.S.C. § 216(b) with respect to their allegations that the law has been violated." *Young v. Cooper Cameron Corp.*, 229 F.R.D. 50, 54 (S.D.N.Y. 2005). *See also Krueger v. N.Y. Tel. Co.*, No. 93-0178, 1993 WL 276058, at *2 (S.D.N.Y. July 21, 1993) ("[T]he Court need not evaluate the merits of plaintiffs' claims in order to determine whether a 'similarly situated' group exists.").

## B. "Similarly Situated"

Plaintiffs move to certify this action as a collective action based on the claim that they and potential plaintiffs are similarly situated because they all are (or have been): (1) TSRs; (2) employed by Verizon; and (3) subject to the same policies and procedures regarding overtime payments. The 23 declarations plaintiffs have submitted were made by employees from facilities and offices located in the three different states targeted in the complaint (*i.e.*, New York, New Jersey, and Pennsylvania). These declarations and the allegations in the complaint, if proved, establish that defendants classified TSRs as non-exempt under the FLSA but failed to pay them overtime for all hours worked over forty per workweek. They also support plaintiffs' claim that defendants had a policy and practice of maintaining no system by which employees could record their hours worked and show that defendants' refusal to make overtime payments does not vary between offices. Plaintiffs cite numerous cases where courts have granted certification after reviewing summary allegations culled from as few as one affidavit and the complaint. *See, e.g., Sipas v. Sammy's Fishbox, Inc.*, No. 05-10319, 2006 WL 1084556 (S.D.N.Y. Apr. 24, 2006); *Young*, 229 F.R.D. at 55; *Mazur v. Olek Lejbzon & Co.*, No. 05-2194, 2005 WL 3240472 (S.D.N.Y. Nov. 30, 2005).

Defendants argue that plaintiffs have failed to show that (1) they are similarly situated to all TSRs currently and formerly employed by Verizon in New York, New Jersey, and Pennsylvania, and (2) they were victims of a common policy or plan that violated the law. Defendants stress that, while plaintiffs seek certification of all TSRs in New York, New Jersey, and Pennsylvania, they have submitted evidence relating to only nine of the company's 19 division and satellite offices that employ TSRs throughout these three states. Therefore, defendants argue, the court has no way of knowing whether the sales representatives in the other ten locations are similarly situated to the

plaintiffs or not, and cannot include them in any proposed FLSA collective action. In addition, defendants have attached to their opposition papers 100 sworn declarations from TSRs working at 14 of the 19 locations where the company employs TSRs. These declarations recite either that the TSR never worked overtime or, if the TSR did work overtime, the TSR was compensated at a rate of one and one-half times the regular rate of pay in accordance with the defendants' overtime policy and the FLSA.

Defendants also point out that the TSRs are unionized employees subject to the terms and conditions of their governing collective bargaining agreements, which clearly state the company's overtime policy: to pay overtime at the rate of one and one-half times employees' regular rate of pay for all hours worked over forty in a work week, in full compliance with the FLSA. Defendants conclude that "[t]here exists no unlawful 'common policy or plan' here, only a handful of anecdotal, individualized allegations by Plaintiffs that on certain occasions, their managers deviated from the Company's lawful policy and did not pay them for all overtime hours worked."

Defendants' argument that collective treatment is inappropriate here is not persuasive. Although the declarations submitted by plaintiffs represent only nine of the company's 19 division and satellite offices that employ TSRs, those offices are located throughout the three states that plaintiffs target. Plaintiffs need not submit evidence implicating every office in New York, New Jersey, and Pennsylvania to establish that Verizon TSRs working in those states were and are similarly subjected to Verizon's allegedly unlawful overtime policy. The representative sample provided by plaintiffs is sufficient to permit an inference that the policy governs all 19 offices. Because the allegations of unpaid overtime do not derive from one geographic location, there is no reason to assume that the policy was limited to only certain offices or areas.

Furthermore, a number of defendants' declarations, from TSRs working in offices not represented in plaintiffs' declarations, actually lend support to plaintiffs' claims. At least 16 of Verizon's own "defense declarants" state in their declarations that they, like the plaintiffs and their 23 declarants, were not paid for the unapproved overtime that they in fact worked.[2] Collectively, the parties' declarations show that TSRs in at least 14 of the 19 offices in New York, New Jersey, and Pennsylvania allege that they are or were subjected to defendants' overtime policies. Defendants' argument that these declarations represent "only a handful of anecdotal, individualized allegations" is therefore contrary to the facts before the court. Accordingly, I find that all TSRs employed in the 19 division and satellite offices are similarly situated for the limited purpose of receiving notice. "Of course, the issue of who is entitled to receive notice at this stage is not conclusive and is subject to modification should further discovery prove that all plaintiffs are not in fact similarly situated." *Young*, 229 F.R.D. at 56.

## CONCLUSION

For the foregoing reasons, plaintiffs' motion for conditional certification is granted. Defendants are ordered to produce to plaintiffs, within ten (10) days of the date of this order, a list, in electronic format, of all persons employed by defendants as "Telephone Sales Representatives" from April 6, 2003, to the present, including: name, last known home address, home telephone number, employee number, and social security number. Plaintiffs are ordered to amend the proposed

---

[2] That these employees were not *required* to work overtime is of no moment. Plaintiffs do not claim that overtime was required, but rather *permitted* (and unpaid), which is the correct liability standard under the FLSA. *See* 29 U.S.C. § 203(g) (defining "employ" of an employee by an employer as "to suffer or permit to work"). According to Department of Labor regulations, even if an employer does not want work to be performed by an employee, it "cannot sit back and accept the benefits without compensating for them." 29 C.F.R. § 785.13. Indeed, "it is the duty of management to exercise its control and see to it that the work is not performed . . . ." *Id.*

9

notice and consent form annexed to plaintiffs' reply papers in accordance with the directions provided by the court during oral argument. *See* Oral Argument Tr. 17-22, May, 30, 2007. Finally, plaintiffs' counsel is authorized to mail to the employees identified by defendants the amended notice and consent form, provided the mailing takes place within ten (10) days of the receipt of such names and addresses.

SO ORDERED.

*[signature]*

**NINA GERSHON**
**United States District Judge**

Dated: Brooklyn, New York
June //, 2007